# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

BIG CREEKWOOD COMMONS, LLC, )
                                                                                  )
     Plaintiff, )
                                                                                  )    Case No. 4:22-cv-192
vs. )
                                                                                  )
HY-VEE, INC., )
<u>Serve</u>: Registered Agent )
C T Corporation System )
120 South Central Avenue )
Clayton, Missouri 63105 )
                                                                                  )
and )
                                                                                  )
A+ COMMUNICATIONS AND SECURITY, LLC, )
<u>Serve</u>: Registered Agent )
C T Corporation System )
120 South Central Avenue )
Clayton, Missouri 63105 )
                     )
and )
                   )
BERRY'S LOCK SERVICE LLC, )
<u>Serve</u>: Registered Agent )
Randy J. Straka )
12712 S. 71 Highway )
Grandview, Missouri 64030 )
                   )
     Defendants. )

## COMPLAINT

Plaintiff BIG Creekwood Commons, LLC ("BIG") and for its *Complaint* against defendants Hy-Vee, Inc. ("Hy-Vee"), A+ Communications and Security, LLC ("A+"), and Berry's Lock Service LLC ("Berry's") (collectively, "Defendants") states as follows:

### PARTIES, JURISDICTION AND VENUE

1.     BIG is a Delaware limited partnership, in good standing, foreign registered to do business in the State of Missouri.

2. Defendant Hy-Vee is an Iowa corporation, in good standing, foreign registered to do business in the State of Missouri. Hy-Vee can be served through its registered agent, CT Corporation System at 120 South Central Avenue, Clayton, Missouri 63105.

3. Defendant A+ is an Iowa corporation, in good standing, foreign registered to do business in the State of Missouri. A+ can be served through its registered agent, CT Corporation System at 120 South Central Avenue, Clayton, Missouri 63105.

4. Defendant Berry's is a Missouri limited liability company, in good standing. Berry's can be served through its registered agent, Randy J. Straka at 12712 S. 71 Highway, Grandview, Missouri 64030.

5. Venue is proper in the Western District of Missouri because the case arises out of real property located in Clay County, Missouri.

6. This Court has personal and subject-matter jurisdiction over this dispute because there is complete diversity between plaintiff and defendants, and the amount in controversy exceeds $75,000.

## ALLEGATIONS COMMON TO ALL COUNTS

7. At all relevant times the property that Hy-Vee leased from BIG was located at 207 NE Englewood Rd, Kansas City, Clay County, Missouri (the "Premises"). It was part of the shopping center commonly known as Creekwood Commons.

8. On November 21, 2002, Hy-Vee executed a written Lease Agreement (the "Lease") with J.A. Peterson Enterprises, Inc.

9. A true and correct copy of the Lease is attached hereto as **Exhibit 1**.

10. The Lease commenced on January 1, 2004 and has a term of twenty (20) years.

11. On June 13, 2014, the then owner of Creekwood Commons assigned the Lease to BIG.

12. Under Article 6 of the Lease, Hy-Vee agreed to pay BIG rent in the amount of "Four Hundred Fifty Thousand Four Hundred Fifty and no/100 Dollars ($450,450.00) per year…in equal monthly installments, in advance, of Thirty-seven Thousand Five Hundred Thirty-seven and 50/100 Dollars ($37,537.50) per month…"

13. Article 10 of the Lease outlines the parties' respective responsibilities concerning maintenance and repair.

14. Article 10 states, "Landlord shall have no responsibility for any repairs or maintenance relating to the Demised Premises."

15. Article 10 also states:

> Tenant agrees that from and after the Possession Date and until the end of the term hereof, it will be responsible for all repairs and maintenance to the Demised Premises. Tenant shall keep the Demised Premises in good order and condition, and shall make all necessary or appropriate repairs, interior and exterior, structural and non-structural, ordinary and extraordinary, and foreseen and unforeseen to the building and other improvements making from time to time making up the Demised Premises. All repairs effected by Tenant shall be in all respect of a standard at least substantially equal in quality of material and workmanship to the original work and material in and on the Demised Premises and shall meet the requirements of municipal and governmental authorities. Tenant agrees that Landlord shall have no obligation under this Lease at any time during the term to make any repairs or replacements of any part of the Demised Premises or any alteration, addition, change, substitution or improvement thereof or thereto, whether structural or otherwise. The intention of this Lease is that the rent received by Landlord shall be free and clear of any expense incurred by Landlord under this Lease in connection with any construction, care, maintenance, operation, repair, replacement, alteration, addition, change, substitution and improvement of or to the Demised Premises. Tenant shall at its cost procure and maintain in the Building all safety appliances required by Tenant's hazard carrier to be maintained therein.

16. Article 11 of the Lease outlines the parties' respective responsibilities concerning "Common Area Maintenance and Costs."

17. Article 11 also states that:

Landlord shall operate and maintain the Common Areas, other than Tenant's Prime Parking Area, during the term of this Lease in good order and repair in accordance with reasonable standards of shopping center cleanliness and maintenance. Tenant shall at all times during the term of this Lease, maintain Tenant's Prime Parking Area (including all landscaping and other improvements located therein) in good order and repair in accordance with reasonable standards of shopping center cleanliness and maintenance and make all necessary replacements thereto and in all events in equal or superior condition and repair to the remainder of the Common Areas.

18. Under Article 11 of the Lease, Hy-Vee is required to "maintain Tenant's Prime Parking Area."

19. Under Article 62 of the Lease, Hy-Vee was allowed to "store in the Demised Premises only such merchandise as Tenant intends to offer for sale at retail therein within a reasonable time after receipt thereof…"

20. However, well after it stopped selling items at the Premises, Hy-Vee continued storing two trailers on the Premises, as well as personal property inside the Premises that was not for sale at retail.

21. Since early 2021, BIG has repeatedly informed Hy-Vee—orally and in writing—that Hy-Vee needs to repair its Prime Parking Area to comply with the Lease. Those communications included, but were not limited to:

   a. On or about February 24, 2021, BIG and Hy-Vee had a meeting regarding maintaining the Demised Premises and Hy-Vee's violations of the Lease. At that meeting, Hy-Vee stated that it would only consider paying for superficial maintenance on its Prime Parking Area.

b. On or about March 22, 2021, BIG's property manager sent a letter and photographs to Hy-Vee expressing concerns about the conditions of Hy-Vee's Prime Parking Area.

c. On or about June 2021, BIG through its agents, visited the property and confirmed that Hy-Vee had still failed to provide a plan for making the repairs to Hy-Vee's Prime Parking Area.

22. Upon information and belief, apart from filling a few potholes and cracks, Hy-Vee has done no material work to its Prime Parking Area since at least 2010.

23. By comparison, between 2018 and 2021, BIG spent over $670,000 on the parking lot for the remainder of Creekwood Commons.

24. The reason that Hy-Vee refused to invest time and money to repair and maintain its Demised Premises became clear when Hy-Vee abruptly closed its grocery store in Creekwood Commons on December 31, 2021.

25. On February 3, 2022, BIG sent a formal Notice of Default to Hy-Vee. **Exhibit 2**.

26. The Notice of Default listed the following Lease violations:

   a. Not maintaining the Prime Parking Area in violation of Article 11.

   b. Not repairing the exterior of the Demised Premises after removing the "Hy-Vee" sign from the front of the store in violation of Article 10(B).

   c. Leaving trash and equipment behind the Demised Premises as well as cart corrals on the sidewalk in front of the store in violation of Article 60(A) and Exhibit I ¶ 4.

27. The Notice of Default reminded Hy-Vee that, pursuant to Article 22 of the Lease, Hy-Vee had thirty (30) days after the date of Notice of Default to cure its violations: "if Tenant

shall default in the performance of any covenants, agreements, stipulations, or other conditions contained herein . . . and such default continues for a period of thirty (30) days after written notice of such violation or default has been given by Landlord to Tenant or, in the case of a default not curable within thirty (30) days, if Tenant shall fail to commence to cure the same within thirty (30) days and thereafter proceed diligently to complete the cure thereof . . . then Landlord shall have, besides its other rights or remedies at law or in equity, the following immediate rights . . . ."

28. On February 25, 2022, BIG met with Hy-Vee at the Demised Premises to point out lease violations known at that time.

29. During that walk-through, BIG discovered additional lease violations:

    a. Trailers had been left on the Demised Premises.

    b. A tree was growing dangerously close to the electrical transformer.

    c. An exterior outlet cover was broken.

30. Over the course of the thirty-day cure period, Hy-Vee removed the trash from behind the Demised Premises and the cart corrals from the sidewalk.

31. Unfortunately, during the thirty-day cure period Hy-Vee did not complete, begin, execute contracts for—or even have bids for—work on the Prime Parking Area or the building's exterior.

32. During the thirty-day cure period, Hy-Vee did not cure all of the violations listed in the Notice of Default.

33. All of Hy-Vee's Lease defaults were curable within thirty days.

34. During the thirty-day cure period, Hy-Vee did not commence to cure all of its Lease defaults.

35. Between the Notice of Default and the present, Hy-Vee has not proceeded diligently to complete the cures of all of its Lease defaults.

36. Under Article 22(A), BIG's remedies for Hy-Vee defaulting on the Lease include the following:

> (1) If Tenant shall have abandoned the Demised Premises, at its option, without terminating this Lease, to change the locks on the doors to the Demised Premises and exclude Tenant therefrom.
> (2) At its option, by notice to Tenant, to terminate this Lease. Upon the service of such notice of termination, the term shall automatically terminate.
> (3) At its option, by notice to Tenant, to terminate Tenant's right to possession of the Demised Premises without termination of this Lease.

37. On or about March 7, 2022, BIG sent a Failure to Cure and Notice of Termination of Tenant's Right to Possession Without Termination of Lease to Hy-Vee ("Failure to Cure Notice").

38. A true and correct copy of the Failure to Cure Notice is attached hereto as **Exhibit 3**.

39. This Failure to Cure Notice informed Hy-Vee that BIG was exercising its right to terminate Hy-Vee's right to possession of the Demised Premises without termination of the Lease. Ex. 3.

40. Hy-Vee does not have any ownership interest in the Demised Premises.

41. Hy-Vee's only legal right to enter or possess the Demised Premises was based on the Lease.

42. Consistent with the terms of the Lease, BIG has terminated all of Hy-Vee's legal rights to enter or possess the Demised Premises.

43. Despite the Failure to Cure Notice, when BIG entered the Demised Premises on March 8, 2022 to change the locks, Hy-Vee called the police and accused BIG of being intruders. BIG was forced to give a copy of the new key to Hy-Vee.

44. On or about March 15, 2022, BIG changed the locks to secure the Demised Premises and begin the repairs and maintenance necessary for BIG to mitigate its damages.

45. On March 18, 2022, Berry's changed the locks on the Demised Premises again for the purpose of giving Hy-Vee exclusive access to the space. But the police returned and gave BIG a copy of the new key.

46. On March 18, 2022, A+ turned on Hy-Vee's prior security system to alert Hy-Vee if BIG entered the Demised Premises and to sound an alarm loud enough to disrupt the operations of Creekwood Commons.

47. During that March 18, 2022 meeting, Hy-Vee threatened to prosecute BIG for trespassing if BIG entered the Demised Premises without Hy-Vee's permission.

48. Article 54 of the Lease is titled "Attorneys' Fees and it provides that, "[i]n any action between Landlord and Tenant to enforce the terms of this Agreement, the prevailing party shall be reimbursed by the other party for all reasonable fees and expenses, including attorneys' fees and court costs, incurred by it in connection with the prosecution or defense of such action."

## COUNT I
### (Breach of Contract)

49. BIG incorporates its other allegations by reference as though stated herein.

50. The Lease is a valid and binding contract between Hy-Vee and BIG.

51. BIG has complied with the terms of the Lease.

52. Hy-Vee's breached the Lease by ceasing all operations in the Demised Premises and failing to repair and maintain the Demised Premises, including the Prime Parking Area.

Page **8** of **12**

4893-0794-3959 Case 4:22-cv-00192-BP    Document 1    Filed 03/22/22    Page 8 of 12

53. Hy-Vee's breach of the Lease has caused damages to BIG.

   a. BIG has not received the parking are and other maintenance for which it bargained.

   b. By ceasing operations, Hy-Vee has reduced the value of Creekwood Commons by approximately $6,000,000.

54. BIG satisfied all the conditions precedent to terminating Hy-Vee's possession of the Demised Premises.

55. BIG has terminated Hy-Vee's right to possess the Demised Premises.

56. Hy-Vee has further breached the Lease by continuing to possess the Demised Premises.

57. Hy-Vee's continued possession of the Demised Premises has caused BIG damages insofar as it has prevented BIG from taking the steps necessary to prevent waste to the property.

## COUNT II
**(Unlawful Detainer)**

58. BIG incorporates its other allegations by reference as though stated herein.

59. BIG terminated Hy-Vee's right to possess the Demised Premises.

60. Hy-Vee has continued to possess the Demised Premises after its right to do so was terminated.

61. Defendants have changed the locks and utilized alarm systems to keep BIG from entering the premises and give sole possession to Hy-Vee.

62. Despite having received and responded to the Notice of Default and the Failure to Cure Notice, Hy-Vee has refused to vacate the Property.

63. Defendants have refused to surrender and deliver possession of the Demised Premises to BIG and have unlawfully and willfully detained the Property to which BIG is lawfully entitled.

64. Pursuant to Mo. Rev. Stat. § 534.330.1, Defendants are liable to BIG for double the rental amount plus double damages for having held over the Property after lawful termination of the tenancy.

## COUNT III
**(Declaratory Judgment)**

65. BIG incorporates its other allegations by reference as though stated herein.

66. Plaintiff states as follows for its Claim for Declaratory Judgement against Hy-Vee pursuant to 28 U.S.C. § 2201(a):

67. There is an actual, real, and substantial controversy between the parties regarding who has the right to possess the Demised Premises.

68. BIG has terminated Hy-Vee's right to possess the Demised Premises pursuant to the Lease.

69. Defendants do not recognize the validity of that termination.

70. Pursuant to Fed. R. Civ. P. 57, BIG requests a speedy hearing for the purpose of entering a declaratory judgment that BIG has the exclusive right to possess the Demised Premises.

## COUNT IV
**(Trespass)**

71. BIG incorporates its other allegations by reference as though stated herein.

72. BIG owns the Demised Premises.

73. Defendants entered the Demised Premises on March 18, 2022, changed locks installed by BIG, and instituted a security system to prevent BIG from entering the Demised Premises.

74. Hy-Vee and A+ again entered the Demised Premises on March 21, 2022.

75. Prior to March 18, 2022, Hy-Vee's right to enter or possess the Demised Premises ended.

76. A+ and Berry's did not have BIG's permission to enter and/or modify the Demised Premises on Mach 18, 2022 or at any other time.

77. Defendants damaged BIG by trespassing on the Demised Premises. They destroyed locks installed by BIG and barred BIG's entry to the Demised Premises.

**WHEREFORE**, Plaintiff BIG Creekwood Commons, LLC prays that the Court enter judgment in plaintiff's favor on all counts; award plaintiff compensatory damages; declare that plaintiff has the exclusive right to possess the Demised Premises; award plaintiff its attorney fees pursuant to Articles 22(5) and 54 of the Lease; award plaintiffs costs, prejudgment interest, and post-judgment interest; and order such other and further relief as is just and proper.

Respectfully submitted,

**LEVY CRAIG LAW FIRM**
**A PROFESSIONAL CORPORATION**


By  */s/ Shane C. Mecham*
    Shane C. Mecham    MO #56871
    Eric M. Hurtt    MO #70139
    4520 Main Street
    Kansas City, Missouri 64111
    (816) 474-8181
    Fax: 816/382-6606
    smecham@levycraig.com
    ehurtt@levycraig.com

*Attorneys for Plaintiff*