

February 3, 2022

**VIA FEDERAL EXPRESS**
Hy-Vee, Inc.
5820 Westown Parkway
West Des Moines, IA 50266
Attn: Dennis Ausenhus, Vice President-Real Estate/Engineering

With a copy to:
Hy-Vee, Inc.
5820 Westown Parkway
West Des Moines, IA 50266
Attn: James D. Meyer, Vice President and Corporate Counsel

> Re: **NOTICE OF DEFAULT**
> Lease dated November 21, 2002 (the "**Lease**"), between BIG Creekwood Commons, LLC, a Delaware limited partnership ("**Landlord**") and Hy-Vee, Inc., an Iowa corporation ("**Tenant**"), with respect to certain retail premises (the "**Premises**") located in Creekwood Commons Shopping Center, in Kansas City, Missouri

Dear Tenant,

Unless otherwise defined in this letter, capitalized words used in this letter shall have the same meanings ascribed to such words in the Lease. This letter is to notify Tenant that defaults have occurred and are continuing under the Lease.

Pursuant to Article 11 of the Lease, Tenant is required to "maintain Tenant's Prime Parking Area [shown on **Schedule 1** attached hereto] (including all landscaping and other improvements located therein) in good order and repair in accordance with reasonable standards of shopping center cleanliness and maintenance and make all necessary replacements thereto and in all events in *__equal or superior__* condition and repair to the remainder of the Common Areas" (emphasis added). We have been in communication with Tenant regarding the poor condition of Tenant's Prime Parking Area since early-2021. In a letter dated March 22, 2021, our property manager expressed concerns with the condition of Tenant's Prime Parking Area (photos were included with the letter) and provided Tenant with a list of updates we had recently made to the Common Areas. In the following months, no improvements were done by Tenant, and we were repeatedly told that Tenant was looking into the matter and receiving bids for the repairs needed however Tenant failed to provide detailed information regarding what repairs would be made and when such repairs would commence. Ownership visited the Shopping Center in June 2021 and again sent Tenant photos of the deteriorating conditions. Tenant yet again failed to provide a plan for making the repairs despite our numerous inquiries as to the status.

We acknowledge that, Tenant performed few temporary pothole fills where large cracks and holes existed in Tenant's Prime Parking Area and added mulch to the beds immediately in front of the Store. However, no permanent and/or meaningful repairs have been made to the parking lot and the remaining landscaped areas within Tenant's Prime Parking Area remain in poor condition. The deteriorating conditions of the parking lot are shown in the photos attached to this letter as **Schedule 2** and the deteriorating conditions of the landscaped areas are shown in the photos attached to this letter as **Schedule 3**. All photos were taken on January 28, 2022.

For the period of 2018-2021, over $700,000.00 was spent on repairs and updates to the Common Areas of the Shopping Center controlled by Landlord. Over $670,000.00 was spent on the parking lot alone, the area of which is only slightly larger than the parking lot contained in Tenant's Prime Parking Area. This included an asphalt overlay, restriping, and curb replacement in 2018 and sealcoat and restriping and sidewalk replacement in 2021. As far as we can assess, no material work has been done to Tenant's Prime Parking Area since 2010. We are aware that Tenant received several bids for the repairs needed to the parking lot in Tenant's Prime Parking Area, including one from Conway Asphalt Paving of approximately $300,000.00 and yet Tenant chose to only perform the temporary pothole fillings which cost an estimated $2,000.00. **Schedule 4** attached to this letter contains a drone photo from August 2021 and pictures taken on January 28, 2022, all which show the difference between the condition of Tenant's Prime Parking Area and the parking areas in the remainder of the Shopping Center. Pictures of the sidewalks and curbs within Tenant's Prime Parking Area taken on January 28, 2022, are shown on **Schedule 5** and **Schedule 6** contains pictures of the sidewalks in the remainder of the Shopping Center taken on January 28, 2022.

As can be seen in the pictures, Tenant's Prime Parking Area is clearly not being maintained "in good order and repair in accordance with reasonable standards of shopping center cleanliness and maintenance … and in all events in equal or superior condition and repair to the remainder of the Common Areas," as is required by the Lease.

In addition to Tenant's obligations regarding Tenant's Prime Parking Area, pursuant to Article 10(B) of the Lease, Tenant is "responsible for all repairs and maintenance to the Demised Premises" and "Tenant shall keep the Demised Premises in good order and condition, and shall make all necessary or appropriate repairs, interior and exterior, structural and non-structural, ordinary and extraordinary, and foreseen and unforeseen to the building…" **Schedule 7** contains pictures taken on January 28, 2022, of the storefront of the Demised Premises. While Tenant removed its storefront signage on or about January 2, 2022, as of the date of this letter, Tenant has not yet performed the storefront repairs necessitated by such removal. In addition, as shown on **Schedule 8**, behind the Demised Premises there is rust on the drive and curb caused by Tenant's dumpster and the dock door is damaged. This portion of the drive was freshly seal coated by Landlord in November 2021. As part of Tenant's obligation to keep the Demised Premises in good order and condition, Tenant is responsible for making repairs to the storefront of the Demised Premises necessitated by the removal of Tenant's signage, for the remediation of the rust stains caused by Tenant's dumpster, and for maintaining and repairing the dock door.

Pursuant to Section 4 of Exhibit I, "Tenant shall at all times keep the Premises in an orderly and sanitary condition," and "Common Areas shall not be used by Tenant for temporary trash storage…" Pursuant to Section 13 of Exhibit I, "[t]he outside areas immediately adjoining the Premises shall be kept clean and free from dirt and rubbish by Tenant, and Tenant shall not place, suffer or permit any obstruction or merchandise in such areas." **Schedule 9** contains pictures taken on January 28, 2022, of the area behind the Demised Premises. As shown in the pictures, there is a large amount of trash and equipment, both immediately behind the Premises and in the grass behind the Shopping Center which is easily identifiable as originating from the Demised Premises. Further, **Schedule 10** contains pictures of cart corrals on the sidewalks immediately in front of the Demised Premises. These conditions are unsightly, are attracting dumpster diving and theft through the Shopping Center and are in clear violation of the requirements set forth in the Lease.

Pursuant to Article 60(A) of the Lease, "Tenant shall not commit or suffer to be committed (i) any waste in or upon the Demised Premises or Tenant's Prime Parking Area; (ii) any nuisance or any other act or thing (whether a nuisance or otherwise) which may disturb the quiet enjoyment or any other tenant or occupant of the Shopping Center or its customers or other invitees…" All of the aforementioned conditions are in violation of Article 60(A).

Accordingly, Landlord is hereby delivering written notice to Tenant that Tenant has failed to (1) properly maintain Tenant's Prime Parking Area, (2) perform the required repairs and maintenance of the Demised Premises, (3) comply with Exhibit I of the Lease with regard to the

Common Areas and areas immediately surrounding the Demised Premises, and (4) comply with Article 60(A) of the Lease regarding waste and nuisance, as and when required under the Lease. Tenant's failure to remedy all of the above-referenced conditions within thirty (30) days after the date of this letter shall constitute a default pursuant to Article 22 of the Lease. Landlord hereby demands Tenant's immediate remediation of all conditions set forth herein. Landlord is prepared to exercise all rights and remedies available under the Lease, at law and in equity, in connection with the aforementioned default.

All rights and remedies are expressly reserved. The foregoing does not (i) operate as a waiver of any other default which may exist under the Lease, (ii) operate as a waiver of any right, remedy, power or privilege of Landlord under the Lease, (iii) prejudice or preclude any other or further exercise of any right or remedy provided bylaw or in equity, (iv) entitle Tenant to any other or further notice or demand whatsoever, or (v) in any way modify, change, impair, affect, diminish or release any of Tenant's liability under or pursuant to the Lease or any other liability that Tenant may have.

If you have any questions with respect to the foregoing, please contact me at eblakey@bigcentersusa.com.

Sincerely,

Emily Blakey
Vice President, Legal

cc: Michael Bar
    Elad Pedy
    Eran Levy

## Schedule 1

[SEE ATTACHED 1 PAGE]



EXHIBIT B

## Schedule 2

[SEE ATTACHED 19 PICTURES]

































Case 4:22-cv-00192-BP   Document 1-2   Filed 03/22/22   Page 22 of 75







Case 4:22-cv-00192-BP   Document 1-2   Filed 03/22/22   Page 25 of 75

## Schedule 3

[SEE ATTACHED 7 PICTURES]






Case 4:22-cv-00192-BP   Document 1-1   Filed 03/22/22   Page 29 of 75









## Schedule 4

[SEE ATTACHED 4 PICTURES]









## Schedule 5

[SEE ATTACHED 7 PICTURES]


Case 4:22-cv-00192-BP   Document 1-2   Filed 03/22/22   Page 40 of 75













## Schedule 6

[SEE ATTACHED 4 PICTURES]



Case 4:22-cv-00192-BP   Document 1-2   Filed 03/22/22   Page 48 of 75







## Schedule 7

[SEE ATTACHED 3 PICTURES]







## Schedule 8

[SEE ATTACHED 4 PICTURES]









Case 4:22-cv-00192-BP   Document 1-2   Filed 03/22/22   Page 60 of 75

## Schedule 9

[SEE ATTACHED 12 PICTURES]

























## Schedule 10

[SEE ATTACHED 1 PICTURE]

