## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BIG CREEKWOOD COMMONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:22-cv-192 |
| vs. | ) |
| | ) |
| HY-VEE, INC., | ) |
| <u>Serve</u>: Registered Agent | ) |
| C T Corporation System | ) |
| 400 E. Court Ave. | ) |
| Des Moines, Iowa 50309 | ) |
| | ) |
| and | ) |
| | ) |
| A+ COMMUNICATIONS AND SECURITY, LLC, | ) |
| <u>Serve</u>: Registered Agent | ) |
| C T Corporation System | ) |
| 400 E. Court Ave. | ) |
| Des Moines, Iowa 50309 | ) |
| | ) |
| and | ) |
| | ) |
| BERRY'S LOCK SERVICE, LLC, | ) |
| <u>Serve</u>: Registered Agent | ) |
| Randy J. Straka | ) |
| 12712 S. 71 Highway | ) |
| Grandview, Missouri 64030 | ) |
| | ) |
| Defendants. | ) |

## **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 65(a), plaintiff BIG Creekwood Commons, LLC ("BIG") moves for the Court to enter a preliminary injunction against defendant Hy-Vee, Inc. ("Hy-Vee"). BIG requests that the preliminary injunction prohibit Hy-Vee from entering and/or making any changes to the Demised Premises as defined in the Lease found at Doc. 1.1. In support hereof, BIG states as follows:

# APPLICABLE STANDARD

The Eighth Circuit considers the "*Dataphase* factors" when ruling on a motion for preliminary injunction: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "A district court has broad discretion when ruling on requests for preliminary injunctions, and [the appellate court] will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998); *see also Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000); *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999); *Iowa Right to Life Committee, Inc. v. Williams*, 187 F.3d 963, 966 (8th Cir. 1999).

**I.     BIG is Likely to Succeed on the Merits.**

As part of BIG's purchase of Creekwood Commons in 2014, Hy-Vee's lease was transferred to BIG from J.A. Peterson Enterprises, Inc. At that time, Hy-Vee was using the space it leased to operate a grocery store as the anchor tenant of the shopping center. Article 11 of the Lease states that, "Tenant shall at all times during the term of this Lease, maintain Tenant's Prime Parking Area (including all landscaping and other improvements located therein) in good order and repair in accordance with reasonable standards of shopping center cleanliness and maintenance and make all necessary replacements thereto and in all events <u>in equal or superior condition and repair to the remainder of the Common Areas</u>." (Doc. 1.1) (emphasis added). Beginning in early 2021, after receiving complaints about Hy-Vee's Prime Parking Area from customers and

prospective buyers, BIG informed Hy-Vee, through multiple verbal and written notifications, that Hy-Vee needed to repair its Prime Parking Area to comply with the Lease.  Unfortunately, Hy-Vee failed or refused to make meaningful repairs or perform substantial maintenance.  The Prime Parking Area remains in horrible condition.  BIG fears that the condition has deteriorated to the point of being a safety hazard.

The reason that Hy-Vee refused to invest in maintaining its leased premises became clear when it abruptly closed the store on December 31, 2021, despite the Lease continuing through the end of 2023.  The location remains vacant to this day, and Hy-Vee has not performed substantial maintenance or repairs in this calendar year.  Hy-Vee has stated that it does not intend to re-open a grocery store in the Creekwood Commons.

On February 3, 2022, BIG sent Hy-Vee formal Notice of Default.  (Doc. 1.2).  That notice listed the following Lease violations:

1. Not maintaining the Prime Parking Area in violation of Article 11.

2. Not repairing the exterior of the Demised Premises after removing the "Hy-Vee" sign from the front of the store in violation of Article 10(B).

3. Leaving trash and equipment behind the Demised Premises as well as cart corrals on the sidewalk in front of the store in violation of Article 60(A) and Exhibit I ¶ 4.

Pursuant to the Lease, the Notice of Default gave Hy-Vee thirty days to cure its violations. Article 22(A) of the Lease provides that, "if Tenant shall default in the performance of any covenants, agreements, stipulations, or other conditions contained herein . . . and such default continues for a period of thirty (30) days after written notice of such violation or default has been given by Landlord to Tenant or, in the case of a default not curable within thirty (30) days, if Tenant shall fail to commence to cure the same within thirty (30) days and thereafter proceed

diligently to complete the cure thereof . . . then Landlord shall have, besides its other rights or remedies at law or in equity, the following immediate rights . . . ."

On February 25, 2022, BIG met with Hy-Vee at the Demised Premises to point out lease violations known at that time. During that walk-through, BIG also discovered additional lease violations: trailers had been left on the Demised Premises, a tree was growing dangerously close to the electrical transformer, and an exterior outlet cover was broken. Over the course of the thirty-day cure period, Hy-Vee removed the trash from behind the Demised Premises and the cart corrals from the sidewalk. Unfortunately, Hy-Vee did not complete, begin, execute contracts—or even have bids for—work on the Prime Parking Area or the building's exterior.

On March 4, 2022, Hy-Vee sent BIG an e-mail stating that earlier that day Hy-Vee met for the first time with paving, landscaping, and power washing contractors. To the best of BIG's knowledge, those contractors did not even submit bids to Hy-Vee for the work necessary to comply with the Lease during the cure period. Hy-Vee is not doing anything "diligently to complete the cure."

On March 7, 2022, BIG sent Hy-Vee a Failure to Cure and Notice of Termination of Tenant's Rights to Possession Without Termination of Lease. (Doc. 1.3). BIG informed Hy-Vee that BIG was exercising its remedy under Article 22(3) of the Lease to immediately terminate Hy-Vee's rights to possess the Demised Premises. As a courtesy, BIG offered Hy-Vee a two-week period to remove any personal property from the Demised Premises so long as Hy-Vee coordinated its efforts with BIG.

On March 8, 2022, BIG changed the locks on the Demised Premises. Hy-Vee called the police to report BIG as an intruder. BIG provided a copy of the new key to a Hy-Vee representative. On March 9, 2022, BIG conducted a teleconference with Hy-Vee in an attempt to

resolve the issues between them. At the conclusion of that call, Hy-Vee promised to consider BIG's proposals and respond by the end of the week. On March 11, 2022, Hy-Vee responded by engaging outside counsel to send a letter denying any Lease default. On or about March 15, 2022, BIG changed the locks to the Demised Premises to secure the premises and begin the process of performing repairs and maintenance to make the property safe. On March 18, 2022, defendants came to the Demised Premises to change the locks so that Hy-Vee would have exclusive access to the Demised Premises. The police appeared but elected to refrain from preventing either side from changing the locks as often as they may wish. The police did, however, force Hy-Vee to give BIG a copy of the new key. During that meeting a Hy-Vee representative told BIG that if BIG used the key to enter the Premises without Hy-Vee's permission, Hy-Vee would prosecute BIG for trespassing.

## II. Without a Preliminary Injunction, BIG Will Suffer an Irreparable Harm.

BIG owns the Demised Premises. Hy-Vee's right to possess those premises has been terminated. The Demised Premises are unique real property, and BIG not being able to possess its real property is an irreparable harm.

*Spire STL Pipeline, LLC v. 3.31 Acres of Land* is instructive. Case No. 4:18 CV 1327 RWS/DDN, 2018 U.S. Dist. LEXIS 211176, at *15 (E.D. Mo. Nov. 26, 2018). The Court recognized that delayed possession caused the movant irreparable harm because the movant was under a time-sensitive construction schedule. Similarly, BIG has the opportunity to receive a discount from the contractor who repaired the rest of the Creekwood Commons parking lot if it acts now. Delaying the work on the parking lot, especially in the current market, risks losing this or any contractor to do the work as they accept other contracts in the spring and summer.

Furthermore, the current parking lot is a safety hazard for drivers and pedestrians. The Demised Premises are currently wasting away. The longer they deteriorate, the more expensive they will be to repair.

In addition, the market is constantly shifting. Opportunities that might exist now or in the near future for BIG to re-let the space or sell Creekwood Commons might not exist when this case reaches final judgment.

### III. The Preliminary Injunction Will Not Injure Any Other Interested Parties.

Hy-Vee closed its grocery store in Creekwood Commons on December 31, 2021. In the past three months, Hy-Vee has not operated any business in that location or undertaken any preparations to do so. The only possible explanation for Hy-Vee's conduct is that it is trying to create a food dessert in Clay County that will drive consumers to Hy-Vee's other locations.

Regardless, Hy-Vee cannot claim to be injured by not possessing premises that it voluntarily abandoned three months ago and refused to maintain for the past year. The other interested parties, including customers and other Creekwood Commons tenants, would benefit from the preliminary injunction. BIG will use possession to repair the premises and eliminate unsafe or unsightly conditions.

### IV. Issuing the Injunction is in the Public Interest.

Creekwood Commons is a significant shopping center in a busy part of the metropolitan area. It is against the public interest to have the anchor tenant possessed by an absentee owner. There has been trash around the building. The façade has grown unsightly. Electrical systems have degraded to unsafe conditions. The parking lot is both unsightly and unsafe.

Meanwhile, BIG has the economic interest and capacity to undertake the repairs that Hy-Vee has refused to perform. A safe, secure, and pristine anchor tenant in Creekwood Commons is in the public interest.

**WHEREFORE**, plaintiff BIG Creekwood Commons, LLC prays that the Court enter a temporary restraining order, and a subsequent preliminary injunction, prohibiting defendant Hy-Vee, Inc. from entering and/or modifying the Demised Premises located within Creekwood Commons. Plaintiff also prays for its attorney fees under Articles 22(5) and 54 of the Lease and for such other and further relief as is just and proper.

Respectfully submitted,

**LEVY CRAIG LAW FIRM**
A PROFESSIONAL CORPORATION


By  /s/ Shane C. Mecham
  Shane C. Mecham     MO #56871
  Eric M. Hurtt      MO #
  4520 Main Street
  Kansas City, Missouri 64111
  (816) 474-8181
  Fax: 816/382-6606
  smecham@levycraig.com
  ehurtt@levycraig.com
 *Attorneys for Plaintiff*