IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BIG CREEKWOOD COMMONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 22-00192-CV-W-BP |
| ) | |
| HY VEE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Pending is Plaintiff's Motion for a Preliminary Injunction. (Doc. 2.) For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

Plaintiff BIG Creekwood Commons, LLC brought this case in March 2022. (Doc. 1.) According to the Amended Complaint, which is the operative pleading in this case, Plaintiff owns a piece of property located in Clay County, Missouri, which is part of a shopping center known as "Creekwood Commons" (the "Premises"). (Doc. 5, ¶ 7.) In 2004, the previous owner of the Premises leased the property to Defendant Hy-Vee, Inc. ("Hy-Vee") for a term of 20 years; the lease was assigned to Plaintiff in 2014. (*Id*. at ¶¶ 8–11.) For most of that time, Hy-Vee operated a grocery store at the Premises, but the store closed in December 2021. (*Id*. at ¶ 24.)

The lease agreement ("Lease") between Hy-Vee and Plaintiff's predecessor-in-interest imposed various obligations on Hy-Vee; the relevant obligations are as follows:

- Under Article 10 of the Lease, Plaintiff has "no responsibility for any repairs or maintenance" of the Premises; instead, Hy-Vee is "responsible for all repairs and maintenance" of the Premises, which requires it to "keep the [] Premises in good order and condition, and shall make all necessary or appropriate repairs, interior and exterior,

structural and non-structural, ordinary and extraordinary, and foreseen and unforeseen to the building." (Doc. 5-1, pp. 9–10 (the Lease).)

- Under Article 11 of the Lease, Hy-Vee is required to "pay the entirety of the expense of maintaining [Hy-Vee's] [] Parking Area." (*Id*. at p. 10.)

- Under Article 62 of the Lease, Hy-Vee is permitted to "store in the [] Premises only such merchandise as [Hy-Vee] intends to offer for sale at retail therein within a reasonable time after receipt thereof." (*Id*. at p. 28.)

The Lease further provides remedies for Plaintiff should Hy-Vee violate its obligations. Specifically, Article 22(a) provides that "if [Hy-Vee] shall default . . . and such default continues for a period of thirty (30) days after written notice of such violation or default . . . or, in the case of a default not curable within thirty (30) days, if [Hy-Vee] shall fail to commence to cure the same within thirty (30) days and thereafter proceed diligently to complete the cure thereof," Plaintiff can physically exclude Hy-Vee from the premises, terminate the lease, or terminate Hy-Vee's right to possess the Premises without terminating the lease. (Doc. 5-1, pp. 17–18.)

The Amended Complaint alleges that Hy-Vee breached the Lease in several ways: (1) by continuing to store two trailers and personal property in or on the Premises after it ceased retail operations, in violation of Article 62, (*id*. at ¶ 20); (2) by failing to maintain its parking area as required by Article 11, except for superficial repairs to potholes and cracks, (*id*. at ¶¶ 21–23); (3) by failing to repair the exterior of the Premises, as required by Article 10, (*id*. at ¶ 26); and (4) by otherwise failing to maintain the premises in good conditions. (*Id*. at ¶ 29.)

On February 3, 2022, Plaintiff sent a formal Notice of Default to Hy-Vee; Plaintiff followed-up by walking through the premises on February 25, and allegedly discovered additional concerns. (*Id*. at ¶¶ 25, 28.) During the thirty-day cure period, Hy-Vee allegedly made superficial

attempts to clean the premises, but did not complete or even begin work on the parking area or building exterior. (*Id*. at ¶¶ 30–35.) Consequently, on March 7, Plaintiff sent a notice exercising its option under the Lease to terminate Hy-Vee's right to occupy the premises without terminating the lease. (*Id*. at ¶ 37.) However, when Plaintiff's agents attempted to take control of the Premises, Hy-Vee employees apparently called the police and used the services of a locksmith (Defendant Berry's Lock Service, LLC) and a security company (Defendant A+ Communications and Security, LLC) to exclude Plaintiff. (*Id*. at ¶¶ 43–47.)

Plaintiff then brought this case in March 2022, (Doc. 1), and has now filed a motion for a preliminary injunction prohibiting Hy-Vee from entering or making any changes to the Premises. (Doc. 2.) Hy-Vee opposes the motion. (Doc. 9.) The Court resolves these issues below.[*]

## II. DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Consequently, "[t]he burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

Courts in the Eighth Circuit consider the four so-called "*Dataphase* factors" to determine whether a preliminary injunction is appropriate; those factors are "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The

---

[*] Plaintiff contacted the Court to request an evidentiary hearing on its motion for a preliminary injunction. However, the Court has determined that no evidentiary matters need to be resolved, because even if the Court accepts all of the assertions in the Amended Complaint as true, Plaintiff has failed to allege facts suggesting the existence of an irreparable harm, as required for a preliminary injunction.

3

first of these factors is often determinative, because a party cannot obtain a preliminary injunction without showing a threat of irreparable harm. *Baker Elec. Co-op, Inc.*, 28 F.3d at 1472.

Thus, the Court must assess whether Plaintiff has shown that it is entitled to a preliminary injunction under the *Dataphase* factors. The Court begins its assessment with the threat of irreparable harm, because without such a showing, Plaintiff cannot demonstrate that it is entitled to equitable relief. *E.g., Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999); *see also Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) ("[F]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction[.]") (citation omitted). "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utilities Bd. V. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Harm is irreparable if legal remedies, such as monetary damages, are inadequate to address the harm. *Sampson v. Murray,* 415 U.S. 61, 88 (1974). Thus, "economic loss does not, in and of itself, constitute irreparable harm" because the party suffering the economic loss can receive full compensation through monetary damages. *Iowa Utilities Bd.*, 109 F.3d at 426.

In its initial motion and reply suggestions, Plaintiff advances four arguments to support its position that it faces a threat of irreparable harm. The Court addresses each of these arguments and finds that none of them establishes a threat of irreparable harm.

First, Plaintiff points out that the Premises are "unique real property," and contends that being deprived of access to the Premises is necessarily an "irreparable harm." (Doc. 2, p. 5; Doc. 11, p. 5.) The Court agrees that Plaintiff would suffer an irreparable harm if it were *permanently* deprived of its right to possess the Premises, as real property is "by its very nature [] considered unique." *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996). However, the Court does

4

not believe that this necessarily entitles Plaintiff to *preliminary* injunctive relief, because Plaintiff does not explain why monetary damages are inadequate to compensate it for the deprivation of its right to possess the Premises *during the pendency of this suit*. And indeed, the cases Plaintiff cites to support its position all involved plaintiffs who were at risk of *permanently* losing their property, e.g., through eviction, *see O'Hagan*, 86 F.3d at 783 (plaintiff faced a forced sale of her homestead property); *Tau, Inc. v. Alpha Omicron Pi Fraternity, Inc.*, 2013 U.S. Dist. LEXIS 135546, at *47 (D. Minn. Sept. 23, 2013) (irreparable harm existed where the defendant "has demonstrated a willingness to act swiftly and unilaterally . . . suggesting that a decision to mortgage or dispose of the Property [permanently] may be made and executed in the absence of a Court order preventing such an action"), or where a temporary deprivation of the plaintiff's ability to access the property caused a corollary irreparable harm. *Spire STL Pipeline LLC v. 3.31 Acres of Land*, 2018 U.S. Dist. LEXIS 211176, at *16–18 (E.D. Mo. Nov. 26, 2018) (irreparable harm existed where plaintiff had contractual obligations to complete a project on the property, and external factors required the plaintiff to begin the project immediately). In short, the mere fact that this case concerns real property does not mean that Plaintiff is entitled to a preliminary injunction.

Second, Plaintiff contends that it "has the opportunity to receive a discount" on parking lot repairs "if it acts now." (Doc. 2, p. 5.) More broadly, Plaintiff complains that the "Premises are currently wasting away," and that "[t]he longer they deteriorate, the more expensive they will be to repair." (*Id*. at p. 6.) However, these lost opportunities to repair the Premises are clearly compensable through monetary damages—namely, the cost of repairs at the close of the suit, whether or not that cost is higher than it would be now.

Third, and in the same vein, Plaintiff argues that because the market is shifting, Plaintiff may lose the opportunity to "re-let the space or sell Creekwood Commons." (*Id*. at p. 6.) This

5

argument faces the same problems as Plaintiff's previous argument: a lost financial opportunity can "be remedied in a suit for monetary damages." *E.g., Gelco Corp v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987). Moreover, the Court notes that according to the Amended Complaint, Plaintiff chose not to terminate the Lease upon discovering Hy-Vee's breaches; rather, it terminated Hy-Vee's right to possess the Premises *without* terminating the lease. (*E.g.,* Doc. 5, ¶ 37.) Thus, because the Lease remains in effect (regardless of the merits of Plaintiff's claim and regardless of Hy-Vee's alleged breaches), it is unclear how Plaintiff has the legal right to find a new tenant or sell Creekwood Commons.

Fourth and finally, Plaintiff asserts that "the current parking lot is a safety hazard for drivers and pedestrians." (Doc. 2, p. 6.) Plaintiff does not explain or substantiate this assertion, however, and there are no allegations in the Amended Complaint suggesting that the current state of the parking lot is dangerous. (*See generally* Doc. 5.)

In sum, Plaintiff has alleged that Hy-Vee is engaging in ongoing breaches of the Lease which are damaging the Premises and threaten to increase the costs of repair. But that behavior, if proven true, will simply increase the increase the amount of monetary damages to which Plaintiff is entitled should it win this suit; and because monetary damages are sufficient to compensate Plaintiff for any harm it suffers during the pendency of the suit, the Court concludes that Plaintiff has not established a significant threat of irreparable harm that warrants preliminary injunctive relief. Because the absence of such a showing is "an independently sufficient ground upon which to deny a preliminary injunction," *Novus Franchising, Inc.*, 725 F.3d at 893 (citation omitted), Plaintiff is not entitled to a preliminary injunction, regardless of the other *Dataphase* factors.

6

Case 4:22-cv-00192-BP   Document 12   Filed 05/10/22   Page 6 of 7

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction, (Doc. 2), is **DENIED**.

**IT IS SO ORDERED.**

Date: <u>May 10, 2022</u>

<u>/s/ Beth Phillips</u>
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT